UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>NELSON RICKS CHEESE CO., INC., | Bankruptcy Case<br>No. 20-40866-JMM<br><br>Debtor. |

MEMORANDUM OF DECISION

Appearances:

      Aaron J. Tolson, Idaho Falls, Idaho, attorney for Debtor.

      Gary L. Rainsdon, Twin Falls, Idaho, Subchapter V Trustee.

      Andrew Seth Jorgensen, Boise, Idaho, attorney for United States Trustee.

      Holly Roark, Boise, Idaho, attorney for Mary Greenberg.

### *Introduction*

      After dismissal of this chapter 11, subchapter V case on interested party Mary

Greenberg's ("Ms. Greenberg") motion, two motions were filed.[1]  First, Ms. Greenberg

moved for sanctions against Michael Greenberg ("Mr. Greenberg") and further sought the

Court's referral to the United States Attorney's office for criminal prosecution of Mr.

Greenberg.  Dkt. No. 54.  Second, the United States Trustee ("UST") filed a motion to

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

disallow the fees of Aaron J. Tolson, counsel for debtor Nelson Ricks Cheese Company, Inc. ("Debtor").  Dkt. No. 56.  Before the UST's motion came before the Court for hearing, however, it was resolved by stipulation between the parties following approval by the Court.  Dkt. Nos. 74; 79.

The Court conducted an evidentiary hearing on March 10, 2021, at the conclusion of which it ruled on several motions, but took Ms. Greenberg's motion for sanctions against Mr. Greenberg under advisement.  Dkt. No. 77.  Now, after consideration of the briefing, testimony, exhibits, and oral argument presented, as well as the applicable law, the Court issues the following decision which resolves the motion.  Fed. R. Bankr. P. 7052; 9014.

### *Facts*

On March 5, 2013, Debtor was incorporated under the laws of the State of Idaho. Exs. 108; 205 (Jan. 12, 2021 exhibits)[2].  Minutes of a corporate meeting indicated that Ms. Greenberg was the sole shareholder, as well as the Secretary and Treasurer, while Mr. Greenberg served as the company President.  Ex. 203 (Jan. 12, 2021 exhibits).  As Secretary, Ms. Greenberg was given power to "transact business, including but not limited to the maintenance of savings, checking and other accounts as well as borrowing by the Corporation…."  Ex. 204 (Jan. 12, 2012 exhibits).  Moreover, the corporate

---

[2] Because the Court held evidentiary hearings on both January 12, 2021 and March 10, 2021, there are two sets of exhibits in the record and some of the exhibit numbers are the same.  To alleviate any confusion, the Court will indicate the hearing date at which the exhibits were admitted in the citation.

MEMORANDUM OF DECISION − 2

Bylaws provide that "any corporate action, other than the election of directors to be taken by vote of the shareholders, shall be authorized by a majority of votes cast at a meeting of shareholders by the holders of shares entitled to vote thereon."  Ex. 206 at Art. II, Sec. 6. (Jan. 12, 2021 exhibits).

In a document dated July 18, 2013, Mr. Greenberg purported to transfer 100% of the shares held by Ms. Greenberg to himself, as evidenced by a stock transfer document as well as two stock certificates.[3]  Dkt. Nos. 102, 103 (Jan. 12, 2021 exhibits).  Both stock certificates were allegedly signed by Ms. Greenberg, and the transfer document was allegedly signed by Mr. Greenberg in her presence.  Dkt. No. 103.  On November 5, 2020, Mr. Greenberg executed a Waiver of Notice of the annual shareholder meeting and stated thereon his authority to place the corporation in bankruptcy.  Ex. 101 (Jan. 12, 2021 exhibits).

On November 9, 2020, using this purported authority, Debtor filed a bankruptcy petition under chapter 11, subchapter V.  Dkt. No. 1.  The petition was signed by Michael Greenberg under penalty of perjury.  *Id.*  Ms. Greenberg, as the sole shareholder at the time of incorporation, challenged the bankruptcy filing on the grounds that the bylaws gave her the sole authority to file a bankruptcy petition on behalf of the company, and

---

[3] There are two stock certificates showing Mr. Greenberg held 100% of the shares.  The first is found in Exhibit 102, which has the word "SPECIMEN" across it, while the second one, admitted as the first page of Exhibit 103, appears to be the same stock certificate without the word "SPECIMEN" on it.  They each bear the same date, July 18, 2013.  It is unclear whether the documents were actually executed on July 18, 2013, or were backdated to that date.

MEMORANDUM OF DECISION − 3

filed a motion to dismiss the case. Dkt. No. 23. In response, Mr. Greenberg objected to the motion to dismiss, arguing that he was the Debtor's shareholder and thus had proper authority to sign the petition. Dkt. No. 34. He attached the documents purporting to evidence the stock transfer to support his assertions. *Id.*

The Court held an evidentiary hearing on January 12, 2021, at which Mr. Greenberg appeared and testified under oath that he did not sign Ms. Greenberg's name on the stock certificates, Exs. 102–103, and that he filled out the stock transfer document. Ex. 108 at pp. 7-9; 18-19 (Tr. of Michael James Greenberg, Sr.)[4] (Mar. 10, 2021 exhibits). During cross-examination, however, Mr. Greenberg became agitated, declared the proceedings to be unfair to him, and abruptly concluded his testimony without being dismissed by the Court. *Id.* at p. 31.

After a recess during which Debtor's counsel spoke to Mr. Greenberg, it became clear he did not intend to return to the witness stand. The hearing continued. Ms. Greenberg testified under oath that she did not sign Exhibits 102 and 103, and that she was not present when the stock transfer document was signed. Following her testimony, Ms. Greenberg called a handwriting expert to testify about the signatures on Exhibits 102 and 103; an expert report was also submitted. Ex. 200 (Jan. 12, 2021 exhibits). The expert, Ms. Beth Chrisman, testified that, after her professional analysis, it was her

---

[4] Exhibit 108 contains two transcripts, one of Mr. Greenberg's testimony on January 12, 2021, and one of the Court's oral ruling on January 14, 2021. For clarity, the Court will designate the specific transcript to which it refers in the citation).

MEMORANDUM OF DECISION − 4

opinion that the signatures on Exhibits 102 and 103 were not executed by Ms. Greenberg. *Id.* at ¶ 9; Ex. 108 at p. 17 (Tr. of Court's oral ruling) (Mar. 10, 2021 exhibits).  Even more to the point, after performing an analysis of Mr. Greenberg's handwriting, it was her opinion that Mr. Greenberg affirmatively signed Ms. Greenberg's name on Exhibits 102 and 103.  Ex. 200 at ¶ 9 (Jan. 21, 2021 exhibits); Ex. 108 at p. 17 (Tr. of Court's oral ruling) (Mar. 10, 2021 exhibits).

Following the conclusion of Ms. Chrisman's testimony, the Court recessed the proceedings and reconvened two days later to permit Mr. Greenberg to finish testifying. Mr. Greenberg, however, chose not to appear.  Dkt. No. 50.  The Court then orally issued findings of fact and conclusions of law on the record, specifically finding that Ms. Greenberg's signatures on Exhibits 102 and 103 were forgeries, and further, that the forgeries were penned by Mr. Greenberg.  Hrg. Tr., Ex. 108 at p. 18 (Tr. of Court's oral ruling) (Mar. 10, 2021 exhibits).  The Court further held that Ms. Greenberg did not transfer her shares in the Debtor to Mr. Greenberg.  *Id.*  Additionally, the Court concluded that Mr. Greenberg did not have the authority to file the bankruptcy petition on behalf of the Debtor, that he had submitted forged documents to the Court, and his testimony concerning those documents was not credible.  *Id.* at pp. 19–20.  The Court granted Ms. Greenberg's motion to dismiss on the grounds that Mr. Greenberg did not have corporate authority to file a bankruptcy petition on behalf of Debtor.  Dkt. No. 51. The sanctions motions followed.

MEMORANDUM OF DECISION − 5

As noted above, the UST's motion to disallow the fees of Debtor's counsel was resolved by stipulation and approved by the Court.  Dkt. Nos. 74; 79.  On March 10, 2021, the Court held a hearing on Ms. Greenberg's sanctions motion.  At the conclusion of the hearing, the Court denied Ms. Greenberg's motion to refer the matter to the United States Attorney's office, noting that the Court always has the duty to refer matters where the circumstances warrant such action, and such is not properly the subject of a motion. After hearing argument and testimony, the Court took the motion to sanction Mr. Greenberg under advisement.  Dkt. No. 77.  This decision follows.

### *Analysis and Disposition*

Before the Court is Ms. Greenberg's motion for sanctions against Mr. Greenberg personally.  There are two issues the Court must address prior to reaching the question of whether a sanction is warranted.  First, whether the Bankruptcy Code or Rules give the Court the authority to sanction Mr. Greenberg, and second, whether this Court has constitutional authority to sanction him.  The Court will consider each of these questions.

A.  Statutory Authority to Sanction

In her motion, Ms. Greenberg cites to § 105(a) as authority for the Court to sanction Mr. Greenberg in this instance.  That section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

MEMORANDUM OF DECISION − 6

Prior decisions from the Ninth Circuit reflect usage of § 105(a) as a basis to sanction. For example, in *Knupfer v. Lindblade (In re Dyer)*, the Ninth Circuit considered, *inter alia,* a bankruptcy court's inherent sanction authority under § 105(a). 322 F.3d 1178, 1196 (9th Cir. 2003). Citing *Caldwell v. Unified Cap. Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996), the panel reiterated that bankruptcy courts possess the inherent power to sanction "bad faith" or "willful misconduct," and such is impliedly recognized under § 105(a). *In re Dyer*, 322 F.3d at 1196. Unlike this Court's civil contempt power, which also stems from § 105(a), before sanctions may be imposed under the Court's inherent powers, an explicit finding of bad faith or willful misconduct must be made. *Id.* Moreover, the panel observed that "bad faith or willful misconduct," in the inherent sanction authority context, "consists of something more egregious than mere negligence or recklessness." *Id.* (citing *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001)); *In re Brown,* 408 B.R. 509, 525 (Bankr. D. Idaho 2009). Rather, "specific intent or other conduct in 'bad faith or conduct tantamount to bad faith' is necessary to impose sanctions under the bankruptcy court's inherent power." *In re Dyer*, 322 F.3d at 1196 (internal citations omitted). Although the specific burden of proof is unsettled in the Ninth Circuit, the general view is that bad faith or willful misconduct must be proven by clear and convincing evidence. *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 416 (9th Cir. BAP 2005), *aff'd,* 564 F.3d 1052 (9th Cir. 2009); *In re Frantz*, No. 2:15-CV-00460-EJL, 2016 WL 4581405, at *11 (D.

MEMORANDUM OF DECISION − 7

Idaho Aug. 31, 2016) (citing *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)).

While the Supreme Court has warned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991), "[s]anctions are justified when a party acts for an improper purpose." *Fink v. Gomez,* 239 F.3d at 992 (emphasis omitted); *In re Snowden*, 769 F.3d 651, 660 (9th Cir. 2014).

This Court may sanction a non-party and non-attorney using its inherent powers. *Lockary v. Kayfetz,* 974 F.2d 1166, 1169-70 (9th Cir. 1992), *overruled on other grounds by amendments to* Fed. R. Civ. P. 11; *In re Rainbow Magazine, Inc.*, 77 F.3d at 282 ("[O]ur opinion in *Lockary* provided support for the exact proposition that the BAP was seeking—we allowed sanctions to be imposed against a nonparty and nonattorney under the court's inherent powers."); *Corder v. Howard Johnson & Co.,* 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices.").

In addition, the imposition of sanctions in an amount that will compensate the parties for costs and fees incurred may be appropriate.  In *In re California Fidelity, Inc.,* the Ninth Circuit reviewed a bankruptcy court's use of its inherent authority to sanction a principal of the corporate debtor for violating § 1125(b) by soliciting votes from stockholders prior to the disclosure statement hearing.  198 B.R. 567 (9th Cir. 1996).  In

MEMORANDUM OF DECISION − 8

affirming, the panel held that it was appropriate for the bankruptcy court to impose

sanctions in an amount that compensated the parties involved for the costs and fees they

incurred.  *Id.* at 574.  The same has been done in this district.  In *In re Rook Broadcasting

of Idaho, Inc.,* 154 B.R. 970 (Bankr. D. Idaho 1993), a creditor distributed an unapproved

disclosure statement to other creditors in violation of the Code.  The bankruptcy court

sanctioned the creditor, requiring him to pay one-half of the attorneys' fees and costs

expended by the debtor in prosecuting its motion to delay consideration of the creditor's

competing plan.  *Id.* at 976.

Accordingly, should the Constitution permit and the facts warrant it, the Court

concludes its inherent powers under § 105(a) empower it to sanction Mr. Greenberg, a

nonparty and nonattorney, and to consider Ms. Greenberg's attorneys' fees and costs as

the basis for the amount of the sanction.

B.  Constitutional Authority to Sanction Mr. Greenberg

The question of this Court's Constitutional authority is founded in part on whether

the matter is classified as a "core" or a "non-core" proceeding.  In 28 U.S.C. § 157(b)(2),

Congress identified a nonexclusive list of 16 types of proceedings it deemed as "core"

proceedings, and gave bankruptcy courts the power to "hear and determine" those matters

and to "enter appropriate orders and judgments," subject to appellate review by the

district court. 28 U.S.C. §§ 157(b)(1); 158.  In contrast, Congress gave bankruptcy courts

more limited authority in non-core proceedings.  In such instances the court may "hear

and determine" such proceedings, and "enter appropriate orders and judgments," only

MEMORANDUM OF DECISION – 9

"with the consent of all the parties to the proceeding." 28 U.S.C. § 157(c)(2). Absent

consent, bankruptcy courts in non-core proceedings may only "submit proposed findings

of fact and conclusions of law," which the district courts review *de novo*. 28 U.S.C.

§ 157(c)(1).

In 2011, the picture was muddied when the United States Supreme Court held that

even though bankruptcy courts are statutorily authorized to enter final judgments in core

matters, Article III of the Constitution nevertheless prohibited final adjudication of

certain of those proceedings. *Stern v. Marshall,* 564 U.S. 462, 499, 131 S. Ct. 2594,

2618, 180 L. Ed. 2d 475 (2011). In those instances, the bankruptcy court is permitted to

issue findings of fact and conclusions of law which may be reviewed *de novo* by the

district court. *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 29, 134 S. Ct. 2165,

2169, 189 L. Ed. 2d 83 (2014). If the parties consent to final adjudication by the

bankruptcy court, however, then Article III of the Constitution is not violated. *Wellness

Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669, 135 S. Ct. 1932, 1939, 191 L. Ed. 2d 911

(2015). There is no specific consent for the Court to enter a final order on the motion for

sanctions. Thus, the question is whether this Court may issue a final ruling on a motion

where the Court is asked to use its inherent powers to sanction under § 105(a). The Court

concludes that it can.

This Court located several decisions of appellate courts in the Ninth Circuit which

have considered the issue of the bankruptcy court's inherent powers to sanction following

the Supreme Court's decision in *Stern v. Marshall*. *See, e.g.*, *In re Snowden,* 769 F.3d at

MEMORANDUM OF DECISION − 10

660; *In re De Jesus Gomez*, 592 B.R. 698, 704 (9th Cir. BAP 2018).  Unfortunately, the

*Stern* issue was not raised either by the parties or *sua sponte* by the appellate court in

these decisions, and this Court has located no cases on point in the Ninth Circuit.

Turning to other jurisdictions which have directly confronted the issue, the courts

have held that the bankruptcy court may issue a final decision.  *See In re All-Tex Staffing*

*& Pers., Inc.*, 599 B.R. 289, 302 (Bankr. S.D. Tex. 2019), *aff'd sub nom. All-Tex Staffing*

*& Pers. Inc. v. Romo-Torres*, No. 4:19-CV-01479, 2020 WL 6384359 (S.D. Tex. Oct. 30,

2020) ("The matter at bar has nothing to do with state law; rather, it has everything to do

with the integrity of the bankruptcy process and this Court's power to enforce—or

vacate—its own orders, especially if the order was procured due to perjured testimony.

Accordingly, there is no *Stern* concern here: this Court definitely has the constitutional

authority to enter a final order on the Motion."); *In re Reed*, No. 4:16CV633 RLW, 2017

WL 44645, at *5 (E.D. Mo. Jan. 3, 2017), *aff'd,* 888 F.3d 930 (8th Cir. 2018) ("The Court

holds that the matters before the Bankruptcy Court that gave rise to the April 20 Order of

sanctions related to disgorgement and turnover of fees and property were matters that

arose under Title 11 and were not private rights or private causes of action. The

Bankruptcy Court clearly had Constitutional authority to rule on these matters."); *In re*

*Hardy*, No. 16-00280, 2017 WL 2491497, at *6 (Bankr. D.D.C. June 8, 2017) (holding

that both the turnover order and the resulting contempt order stem from the bankruptcy

case itself, therefore the enforcement thereof falls within the bankruptcy court's inherent

authority and does not implicate *Stern v. Marshall.*); *In re Trevino*, 615 B.R. 108, 127

MEMORANDUM OF DECISION − 11

(Bankr. S.D. Tex. 2020) (finding that "pursuant to 28 U.S.C. § 157(b)(2)(A), this Adversary Proceeding contains core matters, as it primarily involves a Rule 3002.1 dispute made applicable under § 1322, and a § 105(a) dispute regarding abuse of the judicial process."); *Souther v. Tate (In re Tate)*, 521 B.R. 427, 439, 442–43 (Bankr. S.D. Ga. 2014) (noting that *Stern v. Marshall* did not abrogate the bankruptcy court's inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) to enforce its own orders); *Bavelis v. Doukas (In re Bavelis* ), 519 B.R. 707, 709 (Bankr. S.D. Ohio 2014) (citing case law supporting the proposition that bankruptcy courts have constitutional authority to enforce their prior orders and that such authority is not affected by *Stern v. Marshall*).

While some of those cases involve the Court's civil contempt power to enforce its own orders under § 105(a), the Court concludes the issues presented in Ms. Greenberg's sanctions motion invoke the Court's powers to curb abuses of the judicial process, and thus are not prohibited under *Stern v. Marshall*.  Accordingly, the Court will consider the merits of Ms. Greenberg's motion.

C.  Due Process

Before a court may impose sanctions, procedural due process requires adequate notice and an opportunity to be heard. *Cole v. U.S. Dist. Court for Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004) ("It is axiomatic that procedural due process requires notice of the grounds for, and possible types of, sanctions.").  Specifically, the Court must examine whether Mr. Greenberg received notice reasonably calculated to apprise him of

MEMORANDUM OF DECISION − 12

the pendency of the action and afford him an opportunity to object. *In re Deville*, 280
B.R. 483, 496 (9th Cir. BAP 2002). Generally, the notice regarding sanctions must
specify the authority for the sanction, as well as the sanctionable conduct. *Id.*; *In re
Frantz*, No. 2:15-CV-00460-EJL, 2016 WL 4581405, at *11.

In this case, Ms. Greenberg's motion carefully lays out the legal basis for the
Court's inherent sanctioning power, the legal requirements for the imposition of the
sanctions requested, as well as the factual basis for the request. Dkt. No. 54. In addition,
she set the motion for hearing in order to give Mr. Greenberg an opportunity to present
his objections, contrary facts, and argument, and served it on Mr. Greenberg at two
separate addresses more than a month in advance of the scheduled hearing. Dkt. No. 55.
The Court finds that Mr. Greenberg was afforded due process in this instance.

D.  Sanctionable Conduct

Ms. Greenberg alleges several instances of conduct justifying sanctions against
Mr. Greenberg personally: 1) forging Ms. Greenberg's signature on both Exhibit 102 and
103 and filing those documents with the Court; 2) perjuring himself on January 12, 2021
when he testified he had not signed Ms. Greenberg's name on Exhibit 102 and the first
page of Exhibit 103; and 3) perjuring himself when he testified that Ms. Greenberg was
present when he signed her name on the second page of Exhibit 103.

As noted above, it is unclear whether the forgeries occurred in 2013 or were
manufactured more recently, but that is of little import. There is no question, however,
that the act of forging Ms. Greenberg's signature and transferring 100% of the shares in

MEMORANDUM OF DECISION − 13

the company to himself was a willful and intentional act on the part of Mr. Greenberg,

regardless of the motivation. More pertinent here, when directly confronted by Ms.

Greenberg about his ability to place the Debtor in bankruptcy and sign the petition and

schedules on behalf of the company, he used those false documents as proof of his

authority as the sole shareholder who could vote on such matters. This is a clear example

of willful misconduct and bad faith, and is certainly an act more egregious than mere

negligence or recklessness. The use of documents bearing forged signatures that he

himself inscribed to undertake a corporate act for which he was not authorized, and

signing the petition under that false authority under penalty of perjury is an unmistakable

example of acting for an improper purpose and abuse of the bankruptcy process.

Accordingly, sanctions are permissible under § 105(a).

Furthermore, Ms. Greenberg alleges that Mr. Greenberg perjured himself when he

testified before this Court at the January 12, 2021 hearing that he did not sign Ms.

Greenberg's name to Exhibit 102 and the first page of Exhibit 103. At the January 12,

2021 hearing, Mr. Greenberg testified as follows:

> MS. ROARK: Okay. So Mary Greenberg's signature that you've identified at the
> lower left-hand corner [of Exhibit 102 (Jan. 12, 2021 exhibits)], did you sign that?
>
> MR. GREENBERG: No.
>
> MS. ROARK: So just to be clear, you did not sign Mary's name there?
>
> MR. GREENBERG: I just said no ….

MEMORANDUM OF DECISION − 14

Ex. 108 at p. 7 l. 13–17 (Mar. 10, 2021 exhibits).  The testimony continued and Mr.

Greenberg was asked about Exhibit 103, the stock certificate and stock transfer

document:

> MS. ROARK:  And on the lower left-hand signature, whose signature is that?
>
> MR. GREENBERG:  It appears to be my wife's signature.
>
> MS. ROARK: Did you sign that?
>
> MR. GREENBERG:  It appears to be my wife's signature.  Why would I sign it?
>
> MS. ROARK:  I'm asking if you signed her name.
>
> MR. GREENBERG:  No. Why would I sign her name?  She's good at signing my name.

Ex. 108 at p. 9, l. 12–19 (Mar. 10, 2021 exhibits).

As noted above, the Court later heard testimony from both Ms. Greenberg and a

handwriting expert, Beth Chrisman, and concluded that Mr. Greenberg had, in fact,

signed Ms. Greenberg's name to the stock certificates.  Accordingly, the Court concludes

Mr. Greenberg falsely testified when he denied signing Ms. Greenberg's name to the two

stock certificates as quoted above.  Such false testimony satisfies the requirement of

willful misconduct under § 105(a), and provides a foundation for sanctions.

Ms. Greenberg's final basis for sanctions is that Mr. Greenberg perjured himself

when he testified that Ms. Greenberg was present when he signed her name on the second

page of Exhibit 103.  The Court finds the record evidences no false testimony in this

instance.  Ms. Greenberg was directly asked whether she was present when the stock

MEMORANDUM OF DECISION − 15

transfer document was executed, and she testified she was not.  Because the Court found

her testimony more credible, it concluded that she was not there when the transfer was

executed by Mr. Greenberg.  However, a close examination of the transcript reveals that

Mr. Greenberg was never directly asked whether Ms. Greenberg was present at the time

the second page of Exhibit 103 was executed.  Ex. 108 (Mar. 10, 2021 exhibits).  Mr.

Greenberg testified that he filled out the stock transfer document, but did not address Ms.

Greenberg's presence at the time he did so.  Accordingly, the Court can find no evidence

of false testimony concerning whether Ms. Greenberg was present when the second page

of Exhibit 103 was executed.

E.  Sanctions

      The Court has found Mr. Greenberg forged Ms. Greenberg's signature on Exhibit

102 and the first page of Exhibit 103.  He then filed those sham documents and falsely

testified under oath before this Court when he denied the forgeries.  He used this

purported authority to sign the bankruptcy petition and schedules on behalf of the Debtor,

when in fact that authority rested solely with Ms. Greenberg.  Recall, § 105(a) empowers

this Court to take any action necessary "to prevent an abuse of process."  Mr.

Greenberg's actions were done for an improper purpose and easily constitutes willful

misconduct and bad faith, resulting in an abuse of the bankruptcy process.  The Court

concludes that sanctions are warranted in this case.

      Initially, the Court notes that, pursuant to stipulation, the fees paid by Debtor to its

counsel, Mr. Tolson, will be returned to the Debtor less the filing fee and approved

MEMORANDUM OF DECISION − 16

Trustee's fees.  *See* Dkt. Nos. 74; 79.  As such, the sanctions requested in the motion before the Court involve fees and costs incurred by a non-party as the result of the actions of another non-party, although both are principals of the Debtor.  What ties this motion to the bankruptcy is that the sanctionable conduct occurred in the successful, but ultimately ill-fated, attempt to place the Debtor into the bankruptcy process.  Through her motion, Ms. Greenberg alleges that Mr. Greenberg ought to be sanctioned for his conduct in an amount that will essentially make her whole financially for the costs and fees she was forced to incur to unwind Mr. Greenberg's willful actions.

The Court agrees that Mr. Greenberg's intentional acts resulted in the company being named, for a time, as a debtor in a chapter 11, subchapter V case before this Court. In order for Ms. Greenberg to unwind that action, she had to hire counsel, and a number of hearings were held, a handwriting expert was engaged, and transcripts were prepared. To the end, Mr. Greenberg resisted her efforts, to the point of falsely testifying to this Court under oath.  The test established is a "but-for test," meaning Ms. Greenberg "may recover 'only the portion of [her] fees that [she] would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haegar*, 137 S. Ct. 1178, 1186–87, 197 L. Ed. 2d 585 (2017).  Here, Ms. Greenberg would not have had to retain bankruptcy counsel at all, but-for Mr. Greenberg's actions.

Ms. Greenberg's counsel, Ms. Roark, submitted documentation showing the following costs and expenses were incurred:

MEMORANDUM OF DECISION – 17

$1,600.00 for Ms. Chrisman's fees.  Ex. 105 (Mar. 10, 2021 exhibits)
$15,015.00 for Ms. Roark's attorneys' fees. Ex. 106 (Mar. 10, 2021 exhibits)
____$194.99 for costs.[5]  *Id.*
$16,809.99 total costs and fees

The Court finds the costs and fees charged to Ms. Greenberg by Ms. Roark are reasonable under the circumstances.  In her motion, Ms. Greenberg seeks a sanction in the amount of $15,000.  Dkt. No. 54.  The Court agrees that such amount represents a just sanction to be imposed upon Mr. Greenberg and is directly related to the work required to be undertaken to unwind Mr. Greenberg's actions and halt the bankruptcy case that was filed not only without proper authority, but indeed with manufactured documents and falsified authority backed up with false testimony.  Accordingly, the Court will sanction Mr. Greenberg individually in the amount of $15,000 to be payable to Ms. Greenberg individually, care of Ms. Roark.  The Court directs Ms. Roark to submit a proposed order for the Court's signature.

DATED:  April 30, 2021



_____

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[5] The costs itemized do not appear to include the transcriptionist's charges for the portions of the January 12, 2021 and January 14, 2021 hearings that were transcribed and are found in Ex. 108 (Mar. 10, 2021 exhibits).

MEMORANDUM OF DECISION − 18